Estate of Severin F. Blain, deceased, Helen L. Porter, Executrix v. Commissioner.
Estate of Severin F. Blain v. Commissioner
Docket No. 18782.
United States Tax Court
1949 Tax Ct. Memo LEXIS 174; 8 T.C.M. (CCH) 540; T.C.M. (RIA) 49133; May 26, 1949
*174 Sydney A. Gutkin, Esq., 744 Broad St., Newark, N. J., for the petitioner. Francis X. Gallagher, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: Respondent determined a deficiency against Severin F. Blain in income tax for the taxable year 1943 in the amount of $8,181.22. The year 1942 is also involved because of the provisions of the Current Tax Payment Act of 1943. The sole issue presented is whether the sums of $25,071.62 and $9,751.68, paid to Severin F. Blain during the respective years 1942 and 1943 and being a portion of payments made to Severin F. Blain in settlement of litigation, represented compensation for services or amounts received upon the sale of capital assets. A second issue raised by the petition, whether respondent erred in disallowing the deduction of $250 from the net income of Severin F. Blain for 1943, was conceded by respondent at the hearing. Findings of Fact Petitioner is the Estate of Severin F. Blain, deceased, the duly appointed executrix of his will being his daughter, Helen L. Porter. The decedent died October 20, 1946. He filed his income and victory tax return for the period here involved *175 with the collector of internal revenue for the fifth district of New Jersey. In 1929 the decedent acquired 1,250 shares of the capital stock of Condenser Service & Engineering Co., a New Jersey corporation, the cost basis to him being $16,000. In 1930 the decedent acquired 75 shares of the capital stock of Instrument Service Co., a New Jersey corporation, the cost basis to him being $1,500. On March 18, 1939, the decedent, as second party, entered into an agreement with the Condenser Service & Engineering Co., as first party (hereinafter referred to as Condenser), portions of which follow: "1. The first party will buy and the second party will sell to the first party all of his stock in the Condenser Service & Engineering Co., Inc., being one thousand two hundred fifty (1250) shares, and all of his stock in the Instrument Service Co., Inc., being shares, and settle outstanding indebtedness of the first party to the second party for the total sum of forty thousand ($40,000) dollars, of which said sum will be in payment of said shares of stock and shall be in full settlement of such outstanding indebtedness. "2. The payment of the sum of $40,000 shall be made at the rate of One *176 hundred ( $100) dollars per week, in cash, commencing with the week of April 12, 1939." * * *
The blank spaces in paragraph (1) of the agreement were never filled in. The decedent's adjusted bases for the Condenser and the Instrument Service Co. stock at the time of said sale were in the amounts of $16,000 and $1,500, respectively. During the years 1939, 1940 and 1941 the decedent received a total of $12,800 in payments under the agreement. On September 12, 1941, the decedent filed a complaint in the Court in Chancery of New Jersey against William M. Kennedy, president of Condenser, Howard C. Evans, treasurer of Condenser, together with several corporations and partnerships organized by them, allegedly with funds of Condenser. Condenser and Instrument Service Co., Inc., were also named as party defendants. Relevant provisions of the prayer for relief were as follows: "* * * "2. That the agreement of March 18th, 1939 * * * for the sale of the complainant's shares of stock * * * be decreed to have been procured by fraud and misrepresentation, and that the same be decreed to be set aside. * * * "3. That all the complainant's shares of stock in Condenser * * * and Instrument *177 Service Co., Inc., be returned to him. "* * * "5. That an account may be taken of all the profits * * * had and received by * * * William M. Kennedy and Howard C. Evans * * * and all the losses suffered by the complainant, as well as by the defendants, Condenser * * * and Instrument Service Co., Inc. "* * * "8. That the said defendants, Condenser * * * and Instrument Service Company, Inc., may be ordered and decreed to account to the complainant for all debts and obligations which may be found due complainant from them, and that the complainant may have an accounting thereof. "* * * It developed at the hearing in the Chancery Court that decedent was 63 years of age and of Canadian birth. He learned to speak English at the age of 15 and quit school at the age of 9. He had acquired considerable practical knowledge concerning steam and marine engines and since 1929 had been employed by Condenser in the sale and maintenance of their product and he held the office of secretary of said corporation, of which he owned 40 per cent of the stock. The other stockholder was William M. Kennedy, who owned 60 per cent thereof and was its president. In the spring of 1931 decedent executed *178 and delivered to one Howard C. Evans a power of attorney authorizing him to manage and protect his interests in the corporation and in addition thereto authorized the said Evans to vote his stock in Condenser and the Instrument Service Company. Decedent signed these documents because of his frequent absences from New Jersey. When, on the occasion of his returns, he inquired of Evans, who had become treasurer of the company in the meantime, and of William M. Kennedy, the president, as to the progress of the business of the two corporations, he was repeatedly informed that the business was good but that all prof&ts were being put back into the company for expansion purposes. Early in 1939 Kennedy informed decedent that an opportunity had developed to dispose of the company for $100,000. The alleged purchaser was represented to be Harriman Brothers. On one of his returns to the plant on March 18, 1939, he was presented with the agreement above set forth and a similar contract was submitted by Evans to Kennedy. Petitioner's decedent was unable to understand the proposed contract and relied upon an explanation given him by Evans. He did not know of the blank spaces in the contract *179 nor of the provision therein pertaining to the cancellation of any indebtedness to him from the company, nor that Kennedy, the sole remaining stockholder, was the real purchaser of his shares and not Harriman Brothers as he was told. He was also led to believe that Kennedy was selling his stock, whereas in fact he was not. The decedent thereupon signed the contract. Before turning over his stock, however, on October 31, 1939, the decedent called in his daughter who talked to Evans, a lawyer who at one time had been her employer, and Evans assured her that the transaction was very much for the benefit of her father and that the blank spaces left therein were deliverately so left to promote the sale. In complete reliance upon his assurances, the decedent then turned over his stock in the company, and Evans delivered 31 weekly checks of the company of $100 each, accumulated to the date of the meeting, drawn to the order of the decedent, in part payment therefor. During the remainder of 1939, during 1940, and during part of 1941, the decedent also received $9,700 more in part payment for the stock. It was not until April 1941 that the decedent held certain conversations with other *180 employees of the company which caused him to retain counsel to make an investigation, as a result of which suit in Chancery Court in New Jersey was commenced. This investigation persuaded Blain that Kennedy and Evans had conspired to defraud him at the time of the sale and to procure from the company funds to which they were not entitled. The decedent also learned as a result of his attorney's investigations that the books of Condenser showed that there was due to him as of September 30, 1941, the sum of $42,477.34, made up as follows: For the year 1929
Commissions
$ 6,080.96
For the year 1930
Commissions
11,014.96
For the year 1931
Commissions
7,127.10
For the year 1932
Commissions
6,554.32
For the year 1935
Accrued Salary
2,600.00
For the year 1936
Accrued Salary
2,600.00
For the year 1939
Accrued Salary
6,500.00
Total
$42,477.34
The above items of indebtedness were referred to several times in the complaint and in the affidavit in support of the complaint. Paragraph 26 (c) of the complaint reads as follows: "c. That the said defendants, Kennedy and Evans, well knew, but fraudulently concealed from complainant, the fact that Condenser *181 Co. alone was for a long time actually indebted to the complainant for amounts greatly in excess of the $40,000.00 mentioned in the contract as the purchase price for his stock, and that these indebtednesses were at all times actually carried on the books of account of the Condenser Co. which were kept under Kennedy's and Evans' direct supervision and control. Complainant alleges and charges that it was the knowledge of these indebtednesses, fraudulently concealed from the complainant by the defendants, which resulted in the failure by the defendants to insert such amounts of indebtednesses in the blank spaces provided therefor in the contract of March 18th, 1939, and which amounts were fraudulently and unconscionably kept from complainant and his daughter when they made inquiries concerning the same on the evening of October 31st, 1939." These same allegations were included in paragraph 27 of the affidavit in support of the complaint. At the hearing also the auditor's report disclosed that on December 31, 1938, the net worth of Condenser Service & Engineering Company was $268,356.90 and that the value of Blain's stock, including "the amount of indebtedness alleged to be due as *182 of December 31, 1938," rested somewhere between $107,342.76 and $171,939.93. Although the decedent was secretary of Condenser, no minutes of meetings were ever drawn by him, he never read any such minutes and he was never notified of, and did not attend any directors or stockholders meetings. By agreement dated July 23, 1942, the foregoing Chancery litigation was settled. The agreement reads in part as follows: "ARTICLES OF AGREEMENT made this 23rd day of July, 1942, between CONDENSER SERVICE & ENGINEERING CO., INC., a corporation of the State of New Jersey, hereinafter referred to as 'CONDENSER CO.' and SEVERIN F. BLAIN, of the City of Jersey City, County of Hudson and State of New Jersey, hereinafter referred to as 'BLAIN'. * * *
"NOW, THEREFORE, in consideration of the sum of Ninety-seven thousand five hundred ($97,500.00) Dollars lawful money of the United States to be paid as hereinafter mentioned by the said CONDENSER CO. to the said BLAIN, the said parties do hereby agree as follows: - "1. That they will forthwith file or cause to be filed a written stipulation executed by their respective counsel consenting to the entry of an Order dismissing the saie Bill of *183 Complaint and thereby terminating the above mentioned Chancery suit and all proceedings thereunder. "2. Said CONDENSER CO. for itself, its successors and assigns, hereby agrees to pay to the said BLAIN the said sum of ninety-seven thousand five hundred ($97,500.00) Dollars in the following manner, to wit: - "Upon the signing and execution
hereof, by cash or check
$80,000.00
"By an additional payment on Aug.
1, 1943
8,500.00
"The balance on August 1, 1944
9,000.00
"Total
$97,500.00
* * * * *
"4. The contract heretofore entered into between the above mentioned parties dated March 18, 1939, is hereby affirmed and confirmed in all its respects." In addition to the sum of $97,500, that portion of $40,000 still unpaid under the agreement of March 18, 1939, which portion amounted to $27,200, was paid to the decedent during 1942, 1943 and 1944. The gross amounts paid to the decedent under this settlement during the taxable years 1942 and 1943, before deduction of legal fees by the decedent's attorney, through whom the payments were made by Condenser, were $86,800 in 1942 and $33,900 in 1943. The remainder of $4,000 was paid in 1944. During each of the *184 taxable years 1942 and 1943 the decedent received compensation for personal services rendered in the amount of $5,062 for each year, without reference to the matter at issue here. In the notice of deficiency respondent stated that $25,071.62 of the $86,800 received by Blain in 1942 and $9,751.68 of the $33,900 received by Blain in 1943 as payment under the settlement agreement aforesaid constituted ordinary income and that the balance of said funds constituted capital gain. Opinion By computation it will be noted that the Commissioner has considered 28.85 plus per cent of the amounts received under the settlement agreement by the taxpayer in 1942 and 1943 as constituting payments on his claim for commissions and salary against Condenser. Neither in the briefs, the record nor the notice of deficiency are we able to find the manner in which this conclusion was reached. However, the petitioner questions this percentage only to the extent that it contends that all of the money received by Severin F. Blain should be taxed as capital gain and not as income. The classification for tax purposes of amounts received in settlement of litigation is to be determined by the nature and basis *185 of the action settled. ; ; (C.C.A. 1, 1944), cert. denied, ; (C.C.A. 3, 1935); (C.C.A. 6, 1932); . Therefore the answer to the question here at issue must be found by a scrutiny of the complaint filed by the decedent in Chancery Court of New Jersey on September 11, 1941, which was the action settled. In the Chancery suit, out of which the income involved in this proceeding arose, the decedent sought both a rescission of the contract by which he sold his shares of stock and that defendants be ordered to account for all debts and obligations due him. Whatever the merits of his claim for commissions and salary may have been, it is evident that decedent in his proceeding was seeking as part of his relief to be paid all amounts due him by way of commissions and *186 salary. Furthermore, in the agreement of settlement the terms and provisions of the contract of March 18, 1939, were "affirmed and confirmed in all its respects." Prominent among those terms was the statement " shall be in full settlement of such outstanding indebtedness." Thus, it is quite evident not only that Blain was seeking payment of back salary and commissions to him in his Chancery proceeding, but also that in the contract settling that Chancery proceeding the claim for back salary and commissions is specifically referred to. The evidence is undisputed that although Blain was unaware of his claim for commissions and salary at the time he sold his stock, he was fully aware of said claim at the time of the settlement and it is inconceivable that the evidently skilled counsel representing the parties to this Chancery suit would not have expressly excluded the claim for salary and commissions from the settlement, if such were the intention of the parties. It was the obvious purpose of all counsel to include in the settlement all claims of whatsoever nature Blain had against the defendants. The petitioner herein relies heavily upon , *187 in which, under facts somewhat similar to those at bar, the taxpayer successfully established that payments received by her in settlement of litigation growing out of alleged fraud in the sale of stock should be taxed as capital gains. However, this Court in that case was careful to note "The evidence is, however, that the petitioner in fact had only one claim against the defendants." In the case at bar the petitioner in the litigation had more than one claim. Since the petitioner herein makes no effort to contest the ratio determined by the Commissioner to reflect the amount in the settlement due to salary and commissions, except to contend that the entire amount of said settlement constituted capital gain, and since it is our conclusion that all of said amounts received in settlement did not constitute capital gain, it is therefore our conclusion that the determination of the Commissioner in his computation of amount, in the absence of testimony, must be presumed to be correct. Since some computation seems to be called for in the settlement of the second issue herein which was conceded by the respondent, Decision will be entered under Rule 50.